| | |
|---|---|
| Adam R. Grossman<br>5766 27th Ave NE<br>Seattle WA 98105<br>(646) 342-1994<br>BK@AdamReedGrossman.com | Judge: Judge Marc L. Barreca<br>Hearing Location: 700 Stewart St #7106<br>Seattle WA 98101<br>Hearing Date: August 30, 2013<br>Hearing Time: 9:30am |

FILED
Western District of Washington
at Seattle

AUG 26 2013

U.S. Bankruptcy Court

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IN RE<br><br>ADAM R. GROSSMAN | CHAPTER 7<br><br>CASE NO. 10-19817-MLB<br><br>DEBTOR'S STATEMENT CONDITIONALLY IN SUPPORT OF TRUSTEE'S OBJECTION TO CLAIMS NO. 14-1 AND 16-1 |

I. Introduction

1. COMES NOW Debtor Adam R. Grossman conditionally in support of Trustee's Objections to Claim No. 14-1 and 16-1. An accurate accounting and characterization

DEBTOR'S STATEMENT CONDITIONALLY IN SUPPORT OF
TRUSTEE'S OBJECTION TO CLAIMS NO. 14-1 AND 16-1
PAGE 1 OF 8

ADAM R. GROSSMAN
5766 27TH AVE NE
SEATTLE WA 98105
(646) 342-1994

of assets and liabilities by both the Trustee and the Debtor in the present case has been difficult.[1] The Trustee previously described this difficulty,

> ...noting up motions and seeking a resolution from a Judge. The question of which Judge the motion should be noted before is one for which I do not have an answer at this time. Without receiving further advice from counsel or court direction, I do not know if the motion would be have to be filed in State Court or Bankruptcy Court.[2]

2. Mr. Grossman is willing to endorse one of several possible classifications of various transactions provided that property rights and accounting for property is (i) complete, consistent, and double-entry, (ii) in accordance with applicable state law, (iii) binding upon all affected parties,[3] (iv) GAAP-allowed, and (v) SEC-compliant.

## II. Background

3. In 2006, Terrington Davies LLC filed with the SEC an offering of securities by the Terrington Davies Tanager Fund, a ten-year Delaware investment partnership, formed on June 30, 2006 scheduled to close June 20, 2016.

4. The offering was exempt from registration under Reg D § 504,505,506 of the Securities Act of 1933 and Securities Exchange Act of 1934 but is otherwise still subject to all of the protections and provisions regarding the purchase or sale of securities.

5. In 2007, Jill Borodin was admitted to the partnership and by 2010 there were separate accounts for each of the four members of her family (two adults, two children).

6. In 2010, Jill Borodin and her attorney Karma Zaike initiated legal proceedings and identified disbursements originating from the Tanager Fund totaling $484,000[4] and represented they were the property of Jill Borodin and her family.

---

[1] E.g., the multiple requests in early 2011 by Mr. Grossman's former counsel for an order extending the deadline by one or two days for submitting schedules; or the Trustee's positions regarding Mr. Opie's payments which were characterized as a loan in Dckt. No. 22, Case No. 11-01954, on January 17, 2012, and not a loan in Dckt. No. 508, Case #10-19817, on July 12, 2013.
[2] Dckt. No. 363, June 13, 2012, p. 3.
[3] Where all parties have neutral standing without prejudice.
[4] The disbursements of $484,000 required the sale of 407,976 shares at the time those disbursements were made.

DEBTOR'S STATEMENT CONDITIONALLY IN SUPPORT OF
TRUSTEE'S OBJECTION TO CLAIMS NO. 14-1 AND 16-1
PAGE 2 OF 8

ADAM R. GROSSMAN
5766 27TH AVE NE
SEATTLE WA 98105
(646) 342-1994

7. These representations were unsupported by the partnership's 2009 tax returns prepared by the accounting firm Petersen Sullivan LLP showing the total value in all family owned accounts was $225,339[5] on December 31, 2009 which was a minority of partnership assets.[6]

8. These representations were unsupported by Jill Borodin's own 2009 tax return showing her total consolidated interest as reported by the partnership and filed MFS making her the sole taxpayer certifying the accuracy of the return.

9. Claiming the cash disbursements belonged to her and to her family, Jill Borodin and attorneys representing or requested by her have sought and obtained court orders in both state and federal courts to seize assets linked to the $484,000 of disbursements.

10. If one partner receives too much ("more than average"), the other partners will have too little ("less than average") using the definition of average. On Dec 14, 2010, the short balance was $296,476[7] excluding costs that now exceed the amount originally due to the partnership and, ultimately, to unpaid creditors and the outside unrelated partners.

11. The winding up of a partnership entitles the partners to a settlement of all accounts under state law: once creditors are paid, partners who have not been paid their full entitlement will receive a disbursement equal to the difference after partners who have received disbursements in excess of their entitlement contribute an amount "equal to any excess of the charges over the credits in the partner's account."[8]

---

[5] $225,339 was the value of 170,637 shares on December 31, 2009. In 2010, the Tanager Fund announced it would close at the end of the year. Consequently, there were no deposits, contributions of capital, share splits or any other mechanism that could have increased the number of shares in a partner's capital account for all partners for the entire year.
[6] The family had no interest in any account not held in the names Borodin, Grossman, or Terrington and had at most a partial interest in the latter.
[7] 407,976 (shares claimed) - 170,637 (shares owned) = 237,339 (shares deficit) x $1.24 = $296,476.
[8] 6 Del C § 15-807(b)

ADAM R. GROSSMAN
5766 27TH AVE NE
SEATTLE WA 98105
(646) 342-1994

## III. Legal Authority

12. The Securities Act of 1933 and the Securities Exchange Act of 1934 provide federal regulation of securities and in 1942, what is now known as "10b-5" (securities fraud) was adopted.[9]

13. 10b-5 is federal law,[10] SEC regulation,[11] and is the basis for Washington State law:[12]

    > Rule 10b-5: Employment of Manipulative and Deceptive Practices. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
    > (a) To employ any device, scheme, or artifice to defraud,
    > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
    > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
    > in connection with the purchase or sale of any security.

14. The repeated use of the word "any" suggests a very broad prohibition against: "any" person by "any" means or through "any" facility of "any" employing "any" contrivance or making "any" untrue statement or engaging in "any" act practice or course of business" which would act to defraud "any" person in connection with the purchase or sale of "any security".

15. "10(b) and Rule 10b-5 prohibit all fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception." (A. T. Brod & Co. v. Perlow, 375 F.2d 393, 397 (CA2 1967)) "Novel or atypical methods should not provide immunity from the securities laws." (Id.) The prohibition is not limited to schemes

---

[9] Of the broad language, SEC Commissioner Sumner Pike asked, "We are against fraud, aren't we?"
[10] 15 U.S.C. § 78j(b)
[11] 17 C.F.R. 240.10b-5
[12] RCW 21.20.010

DEBTOR'S STATEMENT CONDITIONALLY IN SUPPORT OF
TRUSTEE'S OBJECTION TO CLAIMS NO. 14-1 AND 16-1
PAGE 4 OF 8

ADAM R. GROSSMAN
5766 27TH AVE NE
SEATTLE WA 98105
(646) 342-1994

which "involve the type of fraud that is 'usually associated with the sale or purchase of securities.' " (Id.)

16. The prohibition applies if the deception occurs after the sale, if the seller was paid in full, and if creditors -- not investors -- ultimately bear the cost. (Superintendent of Ins. of N.Y. v. Bankers. Life & Cas. Co., 404 U.S. 6 (1971)) Securities exempt from registration are covered: "the fact that the transaction is not conducted through a securities exchange or an organized over-the-counter market is irrelevant to the coverage of 10 (b)." (Id.)

17. Attorneys are not exempt.[13]

18. While the federal bankruptcy courts have original and exclusive jurisdiction over the control and distribution of assets in a bankruptcy estate, those property interests are created and defined by state law. (Butner v. United States et al. 440 U.S. 48 (1979))

### IV. Complete, Consistent, GAAP-Allowed, SEC-Compliant

19. The Trustee's recent motions[14] suggest new understanding regarding the state court and new legal argument for the characterization of assets and liabilities. Payments by Mr. Zieve and Mr. Opie to the Tanager Fund (including related entities) previously characterized as loans to Mr. Grossman[15] are now characterized as transactions between those people and those entities both external to the bankruptcy estate. To accept the following legal conclusions:

    (a) "Claim No. 14-1 of Peter Zieve... in the amount of $120,000... [is] not an obligation and liability of [Adam Grossman] in his personal capacity."[16]

    (b) "Claim No. 16-1 of Lyman C. Opie... payments totaling... $185,000... were [not] intended as loans to [Adam Grossman]."[17]

---

[13] Attorneys are often required to conduct fraudulent activity involving securities for the same reason that attorneys are required to conduct lawful activity: the activity can be legally complex.
[14] Dckt. Nos. 507 (Objection to Claim 14-1, Zieve), 508 (Objection to Claim 16-1, Opie), 517 (Confirming Real Property Is Property Of The Estate) noted for August 30, 2013.
[15] Dckt. No. 22, Case No. 11-01954, January 17, 2012.
[16] Trustee Ron Brown through counsel, Dckt No. 507, p2.

DEBTOR'S STATEMENT CONDITIONALLY IN SUPPORT OF
TRUSTEE'S OBJECTION TO CLAIMS NO. 14-1 AND 16-1
PAGE 5 OF 8

ADAM R. GROSSMAN
5766 27TH AVE NE
SEATTLE WA 98105
(646) 342-1994

without defrauding the Tanager Fund requires simultaneous findings and conclusions such as:

(c) Petersen Sullivan LLP's 2009 IRS Form 1065 reporting of taxpayer partnership interest percentages by taxpayer ID for the Tanager Fund is correct.

(d) Jill Borodin's 2009 IRS Form 1040 reporting her consolidated interest in the Tanager Fund for her and her family is correct.

(e) There were no deposits or cash contributions by any partner to any partnership account during 2010.

(f) "There's community money involved [belonging to Jill Borodin]"[18] in $255,000 originating from the Tanager Fund wired to Placer Title Company on May 20, 2010.[19]

(g) The property located at 20710 Glennview Dr, Cottonwood, CA, was purchased by Mr. Grossman on behalf of the Tanager Fund using the proceeds of $255,000 from a short sale of Tanager Fund treasury shares in a subaccount having end-of-day cash margin in the amount required by FRB Reg T.[20]

(h) The property located at 868 Montcrest Dr, Redding, CA, was purchased with cash disbursed from the Tanager Fund and is held in trust FBO the Ptarmigan Real Estate Fund.

The findings and conclusions (c), (d), and (e) have not been disputed; (f), (g), and (h) are required to comply with 10b-5.[21]

20. Mr. Grossman is willing assist the Trustee and the Trustee's attorney in navigating the complexities of securities analysis[22] by working[23] diligently together to mitigate

---

[17] Trustee Ron Brown through counsel, Dckt No. 508, p2.
[18] Jill Borodin, King County, Case No. 09-3-02955, 11/17/2010, RP, p138.
[19] Karma Zaike on behalf of Jill Borodin, King County, Case No. 09-3-02955, November, 2010.
[20] FRB Reg T proscribes initial (50%) and ongoing (30%) margin requirements for short equities.
[21] Controlling state law defines property interests. Butner, supra. In CA, a court may not enter a default judgment to quiet title. Harbour Vista, LLC v. HSBC Mortgage Services Inc., 2011 WL 6318525 (Cal.App. 4 Dist. 2011). In the DE, the Court of Chancery hears investor actions where the outcome in the present case is not only easy to predict but, more importantly, easy to insure.
[22] Mr. Grossman is not an attorney is not offering legal advice.
[23] In light of the Trustee's new beliefs regarding the characterization of assets and liabilities, Mr. Grossman hopes to work with the Trustee's counsel to update his schedules by 8/30/2013, with the goal of presenting an accurate representation of property and ownership consistent with the Trustee's new, preferred understanding and in full compliance with 10b-5 and to clarify the issues disclosed on his SoFa in May, 2011, from the Trustee's new perspective.

DEBTOR'S STATEMENT CONDITIONALLY IN SUPPORT OF
TRUSTEE'S OBJECTION TO CLAIMS NO. 14-1 AND 16-1
PAGE 6 OF 8

ADAM R. GROSSMAN
5766 27TH AVE NE
SEATTLE WA 98105
(646) 342-1994



compliance[24] risk that will remain very high[25] if the claims objections are sustained absent a more substantial framework[26] and conditionally supports the Trustee's two objections as part of a stipulated agreement necessary to prevent violations of 10b-5 that is presented to the court contemporaneously with the continued motions.

### V. Conclusion

21. 10b-5 was adopted to preserve the integrity of the (public and private) markets by reducing fear of fraud as much as possible. It applies to highly unusual situations when the intent to defraud is clear. (Superintendent of Ins., supra) This is precisely the situation faced by Mr. Opie, Mr. Zieve, Mr. LeBlanc, the late Mr. Dellas (ז״ל) and other investors in the Tanager Fund who rely on the protections of the federal government so that when deciding to make funds available to purchase equity or to extend credit they do not have to worry about whether Karma Zaike, Jennie Laird, Kristyna Larch, Shelly Crocker and Denice Moewes working for the benefit of a naïve and financially unsophisticated divorcing mother employ a custom tailored scheme to defraud them by making representations in proceedings to which they are not a party and violating their civil rights by depriving them of property without due process of law through a scheme having a central attribute of all fraud that the victims do not understand what happened to them until it is too late.

---

[24] Mr. Grossman reiterates concern to the Trustee that Ms. Borodin's reporting on her federal income tax return the consolidated interests owned by her and her family in the Tanager Fund and Ptarmigan Fund and associated companies as of December 31, 2009, requires attention to ensure adequate compliance with the subtleties of 10b-5 and avoid its far reaching provisions.

[25] The current claims objections, absent a supplemental agreement between all interested parties, involve a level of compliance risk which is -- at best -- concerning. The primary compliance risk arises not from any single motion sought by any single attorney regarding any single finding but through the adoption of combinations of statements. positions, interpretations, or actions which, when considered together, are likely to incur compliance risk with respect to the sometimes very highly technical provisions of the Securities Act of 1933 and Securities Exchange Act of 1934.

[26] Any characterization or accounting or finding of ownership should be done in a context that is (i) complete, consistent, and double-entry, (ii) in accordance with applicable state law, (iii) binding upon all affected parties, (iv) GAAP-allowed, and (v) SEC-compliant.

DEBTOR'S STATEMENT CONDITIONALLY IN SUPPORT OF
TRUSTEE'S OBJECTION TO CLAIMS NO. 14-1 AND 16-1
PAGE 7 OF 8

ADAM R. GROSSMAN
5766 27TH AVE NE
SEATTLE WA 98105
(646) 342-1994

## VI. Relief Sought

22. Debtor respectfully requests the court to continuing the hearings for the current motions noted for August 30, 2013, for one or more of the following reasons:

- to issue guidance and allow time to submit whatever additional information the court would like to consider if it finds the concerns outlined herein not sufficiently compelling at this time; and/or,

- to order the parties to mediation seeking a comprehensive settlement of issues that is compliant with 10b-5;

- to order the Trustee to review Mr. Grossman's updated schedules and report back to court a suggested plan for mitigating 10b-5 risk as outlined herein.

- to allow time for filing, now possible,[27] one or more CR 60 Motions to Vacate in state court;

- to allow time for the Tanager Fund's accountants to prepare 2010 accounting that is GAAP-allowed and SEC-compliant;

- to allow time for the Trustee to file a quiet title action in California and derivative partnership suit in Delaware and any other actions seeking clarification of property rights according to applicable state law;

DATED this 23rd day of August, 2013.

*/s/ Adam Grossman/*

Adam R. Grossman
*pro se*

---

[27] On January 26, 2011, in an enforcement action in state court, King County Commissioner Jeske ordered Mr. Grossman to solicit the opinion of the Trustee in writing whether the state court had authority to enforce an order purporting to award non-exempt property as part of a property settlement pursuant to a marital dissolution during a pending bankruptcy. Two and one half years later, on July 15, 2013, the Trustee's attorney wrote, "The Superior Court thus did not have jurisdiction notwithstanding that the stay was not in effect..." (Dckt 517, July 18, 2013, p. 9).

DEBTOR'S STATEMENT CONDITIONALLY IN SUPPORT OF
TRUSTEE'S OBJECTION TO CLAIMS NO. 14-1 AND 16-1
PAGE 8 OF 8

ADAM R. GROSSMAN
5766 27TH AVE NE
SEATTLE WA 98105
(646) 342-1994